UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIELA M. SPIRIDON, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 4:15-CV-01380-JAR |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Movant Daniela Spiridon's motions filed under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. On March 13, 2013, Movant was indicted on six counts of Fraud by Wire, Radio, or Television, in violation of 18 U.S.C. §§ 1343 and 1342, and Forfeiture, in violation of 18 U.S.C. § 981(a), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c). On September 26, 2013, Movant pled guilty to all counts, and the Court sentenced Movant to 78-months' imprisonment on August 9, 2014.

Movant now seeks to set aside her conviction and sentence, asserting that plea counsel was ineffective for failing to review a financial document, later determined to be fraudulent, before instructing Movant to submit the document to her probation officer. Movant also claims that sentencing counsel was ineffective for failing to investigate the financial document, for advising Movant to concede that the document was forged in exchange for a reduced offense level under the sentencing guidelines, and for erroneously advising Movant that she had waived her right to appeal.

The Court held evidentiary hearings on October 12 and 20, 2017, regarding Movant's claims of ineffective assistance of counsel. The transcripts of the evidentiary hearings were prepared, and the parties submitted their proposed findings on January 26, 2018. (Doc. Nos. 73 and 74). Based on the entire record, for the reasons set forth below, Movant's motion will be denied.

## BACKGROUND

**Criminal Proceedings**

On March 13, 2013, Movant was charged by indictment with six counts of wire fraud occurring between 2010 and March 2013 and resulting in significant losses to several victims. On March 23, 2013, plea counsel entered his appearance on behalf of Movant.

On September 26, 2013, Movant pled guilty to all six counts filed against her. (Plea Hearing Transcript, Doc. No. 34, *United States v. Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). The Plea Agreement specifically provided that if, after pleading guilty and before sentencing, Movant intentionally provided misleading, incomplete, or untruthful information to the probation office, the Government would be released from its obligations under the agreement. (Plea Agreement, Doc. No. 42 at ¶ 12, *United States v. Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)).

At the plea hearing, the Court specifically discussed, and Movant indicated that she understood, that Movant was waiving her right to appeal all non-jurisdictional, non-sentencing issues, including any issue related to the filing of pretrial motions, the discovery in the case, and the circumstances of her guilty plea. (*Id.* at 94). She also acknowledged her understanding that she was agreeing to waive her right to appeal the sentence if the Court accepted the guideline calculations. (*Id.*). Movant then confirmed that nobody had promised her anything, threatened her in any way, or made any other representations to her to get her to enter the plea of guilty.

(*Id.*). The Court then ordered that a presentence report be prepared and directed Movant to cooperate and assist the probation officer in the preparation of that report. (*Id.* at 38).

The probation officer conducted an investigation into Movant's financial condition during its preparation of the PSR. In the Disclosure PSR filed on January 30, 2014, the probation officer had no information indicating that Movant impeded or obstructed justice. (Disclosure PSR, Doc. No. 57, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). However, the Disclosure PSR noted that Movant had failed to provide complete information related to her financial situation and provide additional documentation, including bank statements. (*Id.* at ¶ 38).

In February 2014, Movant provided the probation officer with a document titled "Deed Agreement" as proof of a commission she would receive from a transaction valued at ten billion euros. That Deed Agreement was "riddled with typographical errors and appear[ed] fraudulent," as it was numbered in an unusual fashion, the font was inconsistent throughout the document, and Movant's name appeared in only one place on the document. (*Id.* at ¶ 52).

On February 12, 2014, Movant, through plea counsel, accepted the Disclosure PSR. On February 18, 2014, plea counsel filed a motion to withdraw, indicating that he had concerns that Movant was suffering from a mental illness.[1] (Motion to Withdraw, Doc. No. 67, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). Shortly thereafter, the Government filed a motion to revoke Movant's bond on the ground that Movant had provided a document that appeared fraudulent on its face, and that motion was granted.

The Government further investigated the Deed Agreement and contacted the individual listed as the paymaster, Mr. Billy Wilson. (*Id.* at ¶ 54). Wilson stated that he was not the

---

[1] A competency examination was ordered and a hearing held, at which time the Magistrate Judge found Movant to be competent. (Doc. Nos. 97 and 100, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)).

paymaster for the transaction, that he had never heard of some of the entities listed on the Deed Agreement, and that he had never heard of Movant. (*Id.*). Wilson indicated that while he believed the document to be false, it did list his actual bank account number, which could have been obtained from public records or past transactions. (*Id.*). The Government also interviewed the Director of Anti-Money-Laundering Special Investigations at Deutsche Bank, a purported party to the transaction set forth in the Deed Agreement. (*Id.*). The Director also believed the document was fraudulent for a number of reasons, including irregularities in the names used on the document as they related to Deutsche Bank. (*Id.*).

On February 25, 2014, sentencing counsel filed a motion to enter his appearance on behalf of Movant. The Court granted sentencing counsel's motion and subsequently granted plea counsel's motion to withdraw. On February 27, 2014, a Revised PSR was filed. (Revised PSR, Doc. No. 80, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). It included an adjustment for the obstruction of justice, stating that Movant "has failed to provide true and complete financial information to the probation officer while feigning cooperation." (*Id.* at ¶ 41). The probation officer noted that Movant had not accepted responsibility for her criminal conduct and had continued that conduct after pleading guilty. (*Id.* at ¶ 53). The Revised PSR listed the total loss suffered by the victims as $2,579,267.17. As a result, Movant's total offense level under the Revised PSR was 29, with a guideline range of punishment of 87 - 108 months' imprisonment, rather than the total offense level of 22 listed in the Disclosure PSR.

On August 5, 2014, sentencing counsel filed objections to the Revised PSR challenging its conclusion that Movant engaged in obstruction of justice and failed to accept responsibility based on Movant's providing a fraudulent Deed Agreement to the probation office. (Doc. No.

104, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). However, on August 18, 2014, sentencing counsel withdrew those objections.

The Final PSR was filed on August 15, 2014, and it revised the total offense level to 27 with a guideline range of punishment of 70 - 87 months' imprisonment. (Final PSR, Doc. No. 110, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). It also reduced the total loss to $2,499,988.17. (*Id.* at ¶ 41). Movant reported a net worth of approximately $4,353,196.05 based on her claim that she was owed commissions totaling $4,375,000. (*Id.* at ¶ 108). However, the probation officer's investigation found her bank accounts depleted, and the probation officer commented that "the credibility of the financial information provided by [Movant] is now in doubt." (*Id.* at ¶ 108).

On August 19, 2014, Movant appeared at her sentencing hearing, and the Court first established that Movant was competent to proceed with her sentencing. (Sentencing Transcript, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)). The Court also confirmed with Movant that she had reviewed the disclosure, revised, and final PSRs. (*Id.* at 10). Movant confirmed that she had reviewed the PSRs with sentencing counsel and that he had answered any questions she had. (*Id.* at 11). She also confirmed that she wished to withdraw any objections to the Final PSR and that she understood how the sentencing calculations were made. (*Id.* at 15). The Court then sentenced Movant to a term of 78 months in prison, which was within the guidelines range determined by the Court and agreed to by the parties, and then advised Movant of her right to appeal her conviction under some limited circumstances. (*Id.* at 41). Movant signed the Notice of Compliance with Local Rule 12.07(A), acknowledging that sentencing counsel had explained to Movant her right to appeal and that she had not requested that counsel

file a notice of appeal. (Notice of Compliance, Doc. No. 116, *United States v. Daniela Spiridon*, 4:13-cr-00101-JAR-1 (E.D. Mo.)).

**§ 2255 Motion**

On September 2, 2015, Movant filed her motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. (Doc. No. 1). She asserted that both her plea and sentencing counsel were ineffective by failing to keep her reasonably informed about the status of the case, failing to explain and discuss her case, failing to conduct adequate and independent pretrial investigation, failing to file any substantive pretrial motions, and failing to properly advise her of the consequences of pleading guilty. On August 30, 2016, plea counsel filed a motion for leave to file an amended § 2255 motion, which only asserted claims of ineffective assistance of counsel against sentencing counsel. The Court set the matter for a hearing based on plea counsel's apparent conflict of interest, since he had represented Movant in her underlying criminal matter. Plea counsel ultimately withdrew as counsel for Movant (Doc. No. 28), and attorney Kevin Schreiner entered his appearance on behalf of Movant and filed an amended § 2255 motion on December 1, 2016. (Doc. No. 39).

The amended motion asserts the following claims: (1) plea counsel was ineffective because he failed to review and advise Movant regarding the Deed Agreement that she submitted to the probation officer; (2) sentencing counsel was ineffective because he failed to investigate the Government's allegation that Movant forged the Deed Agreement; (3) sentencing counsel was ineffective because he advised Movant to concede that the Deed Agreement was forged in exchange for the Government agreeing that the total loss was less than $2.5 million; and (4) sentencing counsel was ineffective because he advised Movant that she had waived her right to appeal.

**Evidentiary Hearing**

On October 12 and 20, 2017, the Court held an evidentiary hearing on Movant's amended § 2255 motion. At that hearing, Movant, plea counsel, sentencing counsel, and the probation officer testified.

### a. Movant's testimony[2]

Movant testified that she obtained the Deed Agreement on February 8, 2014, and believed the Deed Agreement was authentic. (Evidentiary Hearing Transcript, Vol. 2, Doc. No. 71, at 15, 41). The Deed Agreement was meant to serve as proof of a transaction that she brokered between Deutsche Bank and Singapore Bank. (*Id.* at 8). According to Movant, she obtained the Deed Agreement to establish that she could pay restitution. (*Id.*). Movant testified that prior to providing the Deed Agreement to the probation officer, she contacted Wilson, who verified the authenticity of the Deed Agreement. (*Id.* at 11-12). On February 11, 2014, Movant provided a copy of the Deed Agreement to plea counsel via e-mail. (*Id.* at 16). She testified that plea counsel directed her to forward the Deed Agreement to the probation officer. (*Id.*). Shortly thereafter, plea counsel withdrew from Movant's case, and she retained sentencing counsel.

Movant testified that she advised sentencing counsel of her objections to the Revised PSR's inclusion of a two-level enhancement for obstruction of justice and asked him to investigate the allegedly fraudulent Deed Agreement. (*Id.* at 21). She also directed sentencing counsel to advise the Government that she would fully cooperate in its investigation of the fraudulent origins of the Deed Agreement. (*Id.*). She testified that she offered to provide sentencing counsel with the names and contact information of the parties to the Deed Agreement, as well as her e-mail passwords, computer, and phone, to assist sentencing counsel's efforts to

---

[2] Plea counsel testified before Movant due to a scheduling conflict. However, for purposes of this order and for ease of understanding, the Court will first set forth Movant's testimony.

prove her innocence concerning the origin of the Deed Agreement. (*Id.* at 23-24). She also testified that she provided sentencing counsel with her e-mail communications with Wilson to prove that they had an existing professional relationship. (*Id.* at 24).

With regard to her claim that sentencing counsel was ineffective for failing to provide her with accurate information regarding her right to appeal her sentence and conviction, Movant testified that sentencing counsel told her that her only option was filing a habeas corpus petition. (*Id.* at 31).

On cross-examination, Movant admitted she did not have any problems with plea counsel's representation during the course of her plea. (*Id.* at 33). Movant was questioned about the ten billion euro transaction that she allegedly brokered and testified that she had engaged in extensive e-mail and Skype communications with "21 people at a time on conference calls." (*Id.* at 35). She testified that she had saved all of the e-mails regarding the transaction on a Gmail account, the password for which was provided to sentencing counsel. (*Id.*). She testified that she did not bring those e-mails with her to Court for the hearing. (*Id.* at 37).

Movant testified that all the information concerning the ten billion euro transaction, as well as documents proving she was not involved in fabricating the fraudulent Deed Agreement, was located on a hard drive and memory stick, which in turn was located in a safety deposit box in the name of Lee Chang Trust. (*Id.* at 49-50). Movant testified that Wilson lied to the probation officer when he denied knowing her and that she had spoken with him many times because she was one of his clients. (*Id.* at 38).

The Court then directed some clarifying questions to Movant regarding her e-mail communications about the transaction and with Wilson as follows:

> THE COURT: Okay. And all of these e-mails, all of these communications were on a hard drive, or a thumb drive?

THE WITNESS: Were on my phone, you know, on my phone e-mail. It was on device, or the e-mail on the computer, yes, your Honor.

THE COURT: And the hard drive is in a safe deposit box?

THE WITNESS: That's not the same hard drive we are talking about, your Honor. The hard drive –

THE COURT: Where are the records of any of these transactions?

THE WITNESS: On my computer.

THE COURT: Where is your computer?

THE WITNESS: It was back -- sent back in the summer with my children back to Romania. This is four years ago, your Honor. I asked [sentencing counsel].

THE COURT: So did you ever contact your children and say, "Get that to [sentencing counsel]".

THE WITNESS: Well –

THE COURT: Just answer my question, did you ever contact your children and say, "Get the computer, bring it to [sentencing counsel]".

THE WITNESS: Yes, your Honor, and there is a phone conversation as well.

THE COURT: And to your knowledge, did they do that?

THE WITNESS: No, because [sentencing counsel] –

THE COURT: Okay. Do you know where the computer is now?

THE WITNESS: This summer, they went with the kids back to Romania.

THE COURT: Why wouldn't you have that here today?

THE WITNESS: If I knew, I would have. I could probably have someone bring it. I do not know.

THE COURT: You have known you were going to be here today for a long time; isn't that correct?

>THE WITNESS: You are correct, but I don't know that I need to have it.
>
>THE COURT: Okay. . . .

(*Id.* at 68-70).

**b. Plea counsel's testimony**

Plea counsel testified that he entered his appearance on behalf of Movant on March 22, 2013. (Evidentiary Hearing Transcript, Vol. 1, Doc. No. 71, at 11). Plea counsel further testified that Movant advised him she would be able to obtain proof of future financial compensation totaling several million dollars as a result of a business transaction that she brokered. (*Id.* at 13). He promptly requested a continuance of Movant's sentencing to allow the transaction to conclude because an extraordinary restitution of this kind could be the basis for a downward variance. (*Id.*).

Plea counsel testified that he subsequently participated in a meeting on February 11, 2014, with the Government, the probation officer, and the undersigned to discuss the financial transaction. (*Id.* at 16-17). The main topic of discussion was the Deed Agreement, which Movant had provided to the probation officer via e-mail. (*Id.* at 18). Plea counsel recalled seeing the Deed Agreement for the first time during that meeting, although he testified that he may have received a copy of the agreement via e-mail prior to that; he simply had no recollection. (*Id.* at 20). He had no recollection of any conversation with Movant in which he did or did not advise her to provide the Deed Agreement to the probation officer, and he did not have any reason to believe at that time that Movant had fabricated the document. (*Id.* at 23). However, plea counsel testified that upon review of the document, it was clear that it was fraudulent due to various typographical errors and a number of other discernable inaccuracies. (*Id.*).

Plea counsel acknowledged that in his motion to withdraw as counsel, he suggested that he did not advise Movant to send the document to the probation officer; however, he did not recall any such conversation. (*Id.* at 25). Plea counsel testified that if he had seen the document before the meeting on February 11, 2014, it would have been within an hour of the meeting. (*Id.* at 27).

### c. Probation officer's testimony

The probation officer testified regarding her investigation into Movant's background, including her finances. On February 10, 2014, Movant called the probation officer and informed her that she could provide the probation officer with proof of a transaction worth a large amount of money from which she could pay restitution. (*Id.* at 79). On February 11, 2014, the probation officer received an e-mail from Movant with the Deed Agreement attached. (*Id.* at 79-81). She received a copy of the Deed Agreement from plea counsel about 15 to 20 minutes later, and he highlighted the fact that that the document listed Movant as a beneficiary. (*Id.* at 86). The probation officer testified that the Deed Agreement appeared to be an inauthentic document because the page numbering was unusual, the font was not uniform throughout the document, and the name of one of the banks was misspelled. (*Id.* at 96). The fraudulent nature of the Deed Agreement was confirmed upon subsequent investigation, which revealed that Deutsche Bank was unaware of the transaction and the paymaster did not know Movant. (*Id.* at 100-101).

### d. Sentencing counsel's testimony

Sentencing counsel testified that he was retained to represent Movant after plea counsel withdrew. (*Id.* at 105). He testified that Movant asked him to investigate the Deed Agreement. (*Id.*). She also provided him with an e-mail chain between herself and Wilson, which purportedly proved that they had a professional relationship. (*Id.*). However, sentencing counsel

testified that upon closer inspection of the e-mail chain, the e-mails appeared forged, citing inconsistencies in the e-mail chain and timing errors. (*Id.* at 106-07). Sentencing counsel testified that other than looking at the Deed Agreement, which he believed was fraudulent on its face, and confirming the obvious inconsistencies contained therein with the probation office, he did not perform any additional investigation into the Deed Agreement. (*Id.* at 131).

Sentencing counsel asked Movant to provide him with the login information and passwords to e-mail accounts that Movant claimed would exonerate her. (*Id.* at 109). He obtained the information from Movant's daughter, but was unable to access the account due to two-factor authentication requirements, which required Movant's phone. (*Id.*). Despite attempts to obtain the authentication code from Movant's daughter and friend, who purportedly had the phone, he was never given the code. (*Id.*). Sentencing counsel testified that Movant had also provided him with various leads and contacts to investigate. (*Id.* at 110). However, the information was either unhelpful or sentencing counsel was unable to contact the individual or verify the exonerating information. (*Id.*).

Sentencing counsel testified that he requested that the hard drive containing information about the transaction be sent to him so that he could have it forensically imaged, but was informed that the hard drive was located in a safety deposit box that only Movant could access. (*Id.*). Sentencing counsel was provided sound files that purported to be recorded conference calls over Skype regarding the transaction. (*Id.* at 112). However, sentencing counsel testified that the calls were "textbook wire fraud calls" in which there were "multiple people on the line, including [Movant]" who were "throwing around meaningless jargon." (*Id.* at 113).

After his investigation, sentencing counsel concluded that the Government would be able to prove the allegations in the Revised PSR, and he believed Movant would be lucky if she did

not get an enhancement for abuse of a position of trust or "for sophisticated means." (*Id.* at 115). He was concerned that such enhancements might be added at a later time, and he communicated these concerns when he discussed with Movant the benefits of withdrawing the objections filed to the Revised PSR. (*Id.*).

After Movant's sentencing, sentencing counsel testified that he had counseled Movant that she had not waived sentencing issues by virtue of the plea agreement because her sentence was outside of the range within the original plea agreement; however, because she had come to an agreement with the Government about the appropriate sentence and guideline calculation, any appeal would have a small likelihood of success. (*Id.* at 119). Sentencing counsel also discussed the possibility of a habeas motion with Movant because she seemed interested in filing such a motion against plea counsel. (*Id.* at 120).

## **DISCUSSION**

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A Section 2255 movant asserting ineffective assistance of counsel, however, "faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). To prevail on such a claim, the movant must first show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005). Review of counsel's performance by the Court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). To overcome this presumption, a movant must prove that, "in light

of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

The movant must then establish prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id*. at 695.

Ground One

Movant first argues that plea counsel was ineffective for failing to review the Deed Agreement before directing her to provide it to the probation officer. Plea counsel testified that he did not recall whether he directed Movant to forward the Deed Agreement to the probation officer on February 11, 2014, although his motion to withdraw strongly implies that he did not do so. Specifically, the motion to withdraw contends that plea counsel believed Movant was experiencing psychological difficulties, citing her decision to personally send the probation officer documents "that have jeopardized the guideline calculations estimated in her plea agreement and that have raised a contested issue at sentencing." (*United States v. Spiridon*, 4:13-CR-00101-JAR-1, Doc. No. 67 at ¶ 4). Movant, on the other hand, testified that she had no knowledge of the fraudulent nature of the Deed Agreement, and she believes that plea counsel should have reviewed it for authenticity. However, the Court, after having heard her testimony and having had the opportunity to observe her, finds that Movant's account is not credible.

"In assessing the credibility of witnesses, the court properly may consider variations in demeanor and tone of voice, as well as documents and objective evidence that may contradict a witness' testimony or reveal inconsistencies. Additional considerations may include the witness' motive to lie and the specificity of a witness' statements." *Jackson v. United States*, No. 5:07-CR-110-FL-1, 2014 WL 7149635, at *4 (E.D.N.C. Dec. 15, 2014) (citations omitted). Here, Movant has exhibited a pattern of deceptive behavior, and her insistence that she had no knowledge of the fraudulent nature of the Deed Agreement is refuted by testimony and evidence from other witnesses. In the course of its investigation into the Deed Agreement, the probation officer spoke with some of the parties listed on the Deed Agreement. The representatives of Deutche Bank had no knowledge of the transaction valued at ten billion euros and identified specific portions of the Deed Agreement that exhibited irregular entries. Wilson, the purported paymaster on the Deed Agreement, had no knowledge of its existence and denied any knowledge of Movant, even though she claimed she was one of his clients.

Further, sentencing counsel's testimony highlights Movant's lack of truthfulness. Movant testified that she provided sentencing counsel with information he would need to access her e-mail accounts, and sentencing counsel confirmed that he received this information. However, he was unable to obtain the necessary authentication to access the accounts, and Movant never provided sentencing counsel with any details about the Deed Agreement or contact information for any parties involved in the transaction. Moreover, she provided sentencing counsel with e-mails between herself and Wilson, which sentencing counsel believed had been altered. Movant also provided sentencing counsel with a recorded conference call that sentencing counsel characterized as "textbook wire fraud calls." Even the Court asked Movant where her computer was located (she had shipped it to Romania) and why she had not brought

15

the allegedly exonerating evidence with her to Court, for which she had no answer. This pattern of deceit renders her testimony incredible.

Thus, Movant's contention that plea counsel was ineffective for his failure to prevent her from submitting a document she knows to be fraudulent fails. To hold otherwise would be a perversion of the purpose behind an ineffective assistance of counsel claim, as it would impose an affirmative duty on a defense attorney to prevent his client from engaging in unlawful conduct, even where the attorney has no reason to believe his client was lying or submitting forged documentation.

Ground Two

Movant next contends that sentencing counsel was ineffective for failing to investigate the Deed Agreement. The record directly refutes her assertion, as it demonstrates that sentencing counsel diligently attempted to investigate Movant's claims of innocence, following each lead provided by Movant. Sentencing counsel credibly testified that he tried to access Movant's e-mail accounts and obtain her hard drive for forensic imaging. He attempted to determine the contact information of individuals with whom Movant indicated she had business dealings. All of these leads were too vague or insubstantial to fully investigate. Furthermore, Movant provided sentencing counsel with recordings that he testified were clearly fraudulent, and she was evasive regarding a means by which sentencing counsel could obtain a hard drive purportedly containing exonerating information. Here, sentencing counsel made dutiful attempts to investigate facts supporting Movant's case, and his inability to find nonexistent evidence cannot be held against him. Movant's claim thus fails.

Ground Three

Movant next claims that sentencing counsel was ineffective because he advised her to concede that the Deed Agreement was forged in exchange for the Government's agreement that the total loss was less than $2.5 million. She maintains that if sentencing counsel had done an adequate investigation into the Deed Agreement, "there would have been no reason for him to advise [Movant] to concede that the Deed Agreement was forged." (Doc. No. 74 at 27).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* As indicated above, sentencing counsel did conduct a reasonable investigation, and the Court does not find credible Movant's testimony that she was unaware of the fraudulent nature of the Deed Agreement. Moreover, Movant concedes that she received a benefit from withdrawing her objections: her offense level in the Revised PSR was 29 with a guideline range of punishment of 87 - 108 months' imprisonment, and her offense level in the Final PSR was 27, with a guideline range of 70-87 months' imprisonment. (Doc. No. 74 at 27).

Sentencing counsel testified that based on Movant's conduct after pleading guilty, the Government was no longer bound to its prior sentencing recommendation and could request any sentence that was supported by the facts. (Evidentiary Hearing Transcript, Doc. No. 72, at 118). Based on Movant's conduct, sentencing counsel believed the Government could have moved for several additional enhancements. Therefore, when he was negotiating with the Government, he

17

believed it was beneficial to Movant to withdraw her objections to the Revised PSR to avoid additional enhancements. This conduct was reasonable in light of the particular facts of the case, viewed at the time of counsel's conduct. Movant's claim fails.

Ground Four

In her fourth ground for ineffective assistance of counsel, Movant argues that sentencing counsel provided her with incorrect information about her ability to file an appeal. "[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling [a] petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citation omitted). However, for such a claim to succeed, a movant "must show that [s]he manifestly instructed [her] counsel to file an appeal." *Id*. "A bare assertion by the petitioner that [s]he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id*.

"If the defendant did not clearly request or instruct [her] trial attorney to appeal, . . . the court considering a claim of ineffective assistance must then determine whether counsel consulted with the defendant about an appeal and, if not, whether the failure to consult was unreasonable." *Parsons v. United States*, 505 F.3d 797, 798 (8th Cir. 2007). "Counsel has a constitutionally imposed duty to consult when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." *Id*. (citations omitted).

Here, the Court credits sentencing counsel's testimony over that of Movant. Sentencing counsel testified that he consulted with Movant about her right to appeal and explained "what the

likely scenarios would be." (Evidentiary Hearing Transcript Vol. 2, Doc. No. 72, at 120). Sentencing counsel noted Movant's interest in filing a habeas motion relating to plea counsel's representation, and sentencing counsel advised her that her habeas motion could not be filed until she completed her direct appeal.

Based on the record as a whole, including the record at the plea and sentencing hearings and the Court's observation and evaluation of the demeanor of Movant at the evidentiary hearing, the Court does not find credible Movant's testimony that she did not understand her right to appeal. Movant's testimony is also contradicted by her representations in the signed Notice of Compliance, which sets forth such waiver in plain and simple language. Movant's claim thus fails.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Movant Daniela Spiridon's motions filed under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence are **DENIED**. (Doc. Nos. 1, 39).

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Movant has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th day of April, 2018.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE